UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20615-CIV-ALTONAGA/Damian

TUUCI WORLDWIDE, LLC,

      Plaintiff,

v.

S. FRANKFORD & SONS, INC.,

      Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, S. Frankford & Sons, Inc.'s Motion to Dismiss [ECF No. 49], filed on June 16, 2023. Defendant requests dismissal of the Amended Complaint [ECF No. 40] raising arguments of failure to state claims for relief and improper venue. (*See* Mot. 2).[1] Alternatively, Defendant requests that the Court transfer the action under 28 U.S.C. section 1404(a) to the United States District Court for the Eastern District of Pennsylvania or the District Court for the District of New Jersey. (*See id.*). Plaintiff filed a Response [ECF No. 55], to which Defendant filed a Reply [ECF No. 59]. The Court has carefully reviewed the Amended Complaint, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

## I. BACKGROUND

Plaintiff's Complaint [ECF No. 1] stated claims of trade dress infringement, trademark infringement, and unfair competition. (*See generally* Compl.). The Amended Complaint added additional state-law claims of trade dress and trademark infringement, unfair competition, and

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

tortious interference with business relationships.  (*See generally* Am. Compl.).  Plaintiff is a Florida limited liability company with its principal place of business in Hialeah, Florida.  (*See id.* ¶ 48).  Defendant is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  (*See id.* ¶ 49).

Plaintiff alleges Defendant engaged in a variety of business activities in this District, including "travel, in-person business meetings, luncheons, sales training seminars, product demonstration training sessions, organizing and directing . . . photoshoots of [Defendant's] products" and more.  (*Id.* ¶ 9 (alterations added)).  Plaintiff states that Defendant targets "social media activity [and other marketing activity] towards Florida residents" and refers to Florida as one of its "largest markets[.]"  (*Id.* ¶¶ 14, 22 (alterations added; citation omitted)).  Plaintiff further alleges that Defendant has engaged in trade dress infringement, trademark infringement, and unfair competition in this District.  (*See id.* ¶¶ 8, 9).

Plaintiff's claims relate to its patio "umbrellas, umbrella accessories, and associated shade solutions[.]"  (*Id.* ¶ 53 (alteration added)).  Defendant has allegedly engaged in a willful infringement campaign to copy Plaintiff's trade dress and trademarks.  (*See id.* ¶¶ 3, 83, 84, 88).  The elements of Plaintiff's trade dress include a "Signature Hub Cover" — which is a "hub cover featuring a cylindrical structure with a polished, decorative name plate facing downward" (*id.* ¶ 60); a "Distinctive Domed Base" — "[a] stout, domed base having a stepped, circular shape" (*id.* ¶ 61 (alteration added)); and a "Unique Umbrella Design" — which features a "patio umbrella attached to a single freestanding pole, a silver acorn-style finial atop a canopy, a center hub cover . . . and a silver, star shaped hand knob for securing the pole to the base" (*id.* ¶ 62 (alteration added)).  Plaintiff also has a "Distinctive 'G-PLATE' Trademark" which it uses as a "source identifier" for its products.  (*Id.* ¶¶ 73–76).

The Amended Complaint asserts the following claims for relief: trade dress infringement, in violation of 15 U.S.C. section 1125 (Count I); trademark infringement, in violation of 15 U.S.C. section 1125 (Count II); unfair competition under the Lanham Act, 15 U.S.C. section 1125(a) (Count III); Florida common law trade dress infringement (Count IV); Florida common law trademark infringement (Count V); Florida common law unfair competition (Count VI); New Jersey common law unfair competition (Count VII); New Jersey common law trademark infringement (Count VIII); New York common law unfair competition (Count IX); New York common law trademark infringement (Count X); and tortious interference under Florida law (Count XI).  (*See* Am. Compl. ¶¶ 92–168).[2]

Defendant moves to dismiss Plaintiff's trade dress, trademark, unfair competition, and tortious interference claims under Federal Rules of Civil Procedure 8(a), 12(b)(3), and 12(b)(6); or in the alternative to transfer the action under 28 U.S.C. section 1404(a) to the Eastern District of Pennsylvania.  (*See* Mot. 1).

## II.  DISCUSSION

### A.      Defendant's Motion to Dismiss Under Rule 12(b)(6)

Defendant seeks dismissal of the trade dress and trademark infringement claims on the basis that Plaintiff fails to demonstrate its trade dress and mark are "inherently distinctive" or have "acquired distinctiveness through secondary meaning." (Mot. 9–10 (citations omitted)). Defendant also requests dismissal of the trade dress claims because the alleged "trade dress is functional and cannot support a claim for infringement[.]"  (*Id.* 10–16 (alteration added)).  Given its position that the trade dress is not protectable, Defendant also seeks dismissal of the unfair

---

[2] The Court refers to Counts I and IV as the "trade dress claims;" Counts III, VI, VII, and IX as the "unfair competition claims;" Counts II, V, VIII, and X as the "trademark infringement claims;" and Count XI as the "tortious interference claim."

competition claims.  (*See id.* 16).  Defendant seeks dismissal of the tortious interference claim on the basis that it fails to plausibly allege a claim for relief.  (*See id.* 16–17).  Finally, Defendant asserts all claims are beyond the four-year statute of limitations and are barred by the doctrine of laches.  (*See id.* 17–21).

        1.   <u>Standard</u>

     "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

     To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as

true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)

(citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

        2.    <u>The Trade Dress, Trademark Infringement, and Unfair Competition Claims</u>

"The term trade dress refers to the appearance of a product when that appearance is used

to identify the producer."  *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1202

(11th Cir. 2004) (quotation marks and citation omitted).  Plaintiff alleges claims of trade dress

infringement under both federal and Florida law.  (*See* Am. Compl. ¶¶ 92–98, 109–15).

The federal claim in Count I arises under section 43(a) of the Lanham Act, 15 U.S.C.

section 1125(a)(1).  To prevail on a claim of trade dress infringement under section 43(a), a

plaintiff must allege: (1) the product design of the two-products is confusingly similar; (2) the

features of the product design are primarily non-functional; and (3) the product design is inherently

distinctive or has acquired secondary meaning.  *See* 15 U.S.C. § 1125(a)(1)*.*  "The ultimate

question in determining whether a product's trade dress is distinctive is not whether each element

or part of the dress is distinctive, but rather whether the combination of elements, taken as a whole,

conveys a unique impression."  *Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180,

1245 (S.D. Fla. 2021) (quotation marks and citations omitted).  The standard for the Florida law

trade dress infringement claim in Count IV "is the same as under the Lanham Act."  *Galaxy Am.,

Inc. v. EZ Inflatables, Inc.*, No. 2:19-cv-855, 2021 WL 1909647, at *9 (M.D. Fla. May 12, 2021)

(citation omitted).

Plaintiff alleges claims of trademark infringement under federal, Florida, New York, and

New Jersey law in Counts II, V, VII, and VIII, respectively.  The federal claim arises under section

43(a) of the Lanham Act, 15 U.S.C. section 1125(a).  To state a claim of trademark infringement

under federal law, "a plaintiff must show (1) that it had trademark rights in the mark or name at

issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (quotation marks and citation omitted). To establish infringement of an unregistered trademark, a plaintiff also must allege that the identifying mark "(1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021) (quotation marks and citation omitted). The legal standards for Florida, New York, and New Jersey common law claims of trademark infringement are identical to those for a federal trademark infringement claim. *See Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009); *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 479 (S.D.N.Y. 2020); *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002).

Plaintiff alleges unfair competition claims in violation of federal, Florida, New Jersey, and New York law in Counts III, VI, VII, and IX, respectively. The federal claim arises under section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a). The elements of an unfair competition claim under the Lanham Act are the same as those for trademark infringement. *See Rain Bird Corp.*, 665 F. Supp. 2d at 1269. And the standards for Florida, New Jersey, and New York common law claims of unfair competition are "the same as those for federal claims of . . . unfair competition." *Rain Bird Corp.*, 665 F. Supp. 2d at 1267 (alteration added; citations omitted); *see also Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 430 (S.D.N.Y. 2018); *J & J Snack Foods, Corp.*, 220 F. Supp. 2d at 374.

Defendant argues that Plaintiff's trade dress is not entitled to protection because the features of the trade dress are functional. (*See* Mot. 11–16). Defendant further asserts that Plaintiff's trade dress and trademark are not entitled to protection because their features are non-

distinctive.  (*See id.* 10–11).  Defendant seeks dismissal of the unfair competition claims on the basis that Plaintiff's trade dress is not protectable.  (*See id.* 16 (seeking dismissal of each count "which raise[s] or rel[ies] upon claims of protectable trade dress" (alterations added)).  These arguments fail to persuade because they "impose too high a standard for the current posture of this litigation."  *Microsoft Corp. v. Guirguis*, No. 20-cv-24514, 2022 WL 1664181, at *6 (S.D. Fla. Mar. 30, 2022).  The Court explains.

a.      *Functionality of Trade Dress Elements*

According to Defendant, the functionality doctrine bars Plaintiff's claims for protectable trade dress because the product features of the trade dress are functional and therefore are not protectable.  (*See* Mot. 11–16).  Defendant states that Plaintiff's "utility patents and patent applications" confirm that the elements of Plaintiff's trade dress — Unique Umbrella Trade Dress, Single Freestanding Pole, Star-Shaped Hand Knob, Center Hub Cover, and Stepped and Domed Base — are functional.  (*Id.* 12).  In response, Plaintiff explains this issue should not be resolved at the motion-to-dismiss stage.  (*See* Resp. 15–16).  Plaintiff has the better argument; whether the features Plaintiff identities are functional involves "factual issues which can only be resolved after a full record is presented to the Court."  *Niles Audio Corp. v. OEM Sys. Co., Incl.*, 174 F. Supp. 2d 1315, 1319 (S.D. Fla. 2001).

A functional characteristic is one that is "essential to the use or purpose of the article or one that affects the cost or quality of the article."  *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1039 (11th Cir. 1996) (alteration adopted; citation and quotation marks omitted).  "There is no bright line test for functionality."  *Id.* (citations omitted).

Admittedly, Defendant is correct that the existence of a utility patent is strong evidence of functionality.  (*See* Mot. 12).  "A prior patent . . . has vital significance in resolving the trade dress

claim.  A utility patent is strong evidence that the features therein claimed are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (alteration added).  When a defendant puts forth *evidence* of a utility patent, the "heavy burden" then shifts to the plaintiff to show "that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Georgia-Pac. Consumer Prod. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011) (quoting *TrafFix,* 532 U.S. at 30; other citation omitted).  Here, Plaintiff expressly alleges that the features of its umbrella trade dress are ornamental.  (*See* Am. Compl. ¶¶ 14, 16, 17, 19, 39; *see also* Resp. 15–16).  Taking these allegations as true, dismissal based on the utility patents is not appropriate.

b.    *Distinctiveness*

Defendant makes several arguments about the lack of distinctiveness of Plaintiff's trade dress and trademarks.  (*See* Mot. 9–11).  Defendant first argues that Plaintiff's allegations concerning the inherent distinctiveness or secondary meaning of the G-PLATE Mark are conclusory, as are Plaintiff's allegations about "source-recognition" and "source-indicating power."  (Mot. 9–11).  Defendant then seeks dismissal of the trade-dress claims because Plaintiff seeks protection for "generic, common shapes [which are] not legally protectable."  (*Id.* 10 (alteration added)).  Plaintiff insists that it need not show the G-PLATE Mark has acquired distinctiveness, because the G-PLATE Mark is inherently distinctive.  (*See* Resp. 17–18).  While Plaintiff does not respond to Defendant's argument that Plaintiff's trade dress only consists of common shapes (*see generally* Resp.), dismissal on this issue is not warranted.

Plaintiff's trade dress has "acquired distinctiveness."  (Am. Compl. ¶ 52).  More specifically, Plaintiff's "Signature Hub Cover Trade Dress, [] Distinctive Domed Based Trade Dress, and [] Unique Umbrella Trade Dress are inherently distinctive or have acquired secondary

8

meaning" (*id.* ¶ 63 (alterations added)) and are "non-functional" (*id.* ¶ 66). Plaintiff also alleges

the G-PLATE Mark is "inherently distinctive or has acquired secondary meaning" (*id.* ¶ 75); the

"Signature Hub Cover Trade Dress" and the "Signature Hub Cover Trade Dress" serve "a

decorative, ornamental, and non-functional purpose" (*id.* ¶ 55); and the "Anchor with Tuff Wheels

Design," and the "Anchor with Tuff Wheels Design" serve "a decorative, ornamental, and non-

functional purpose" (*id.* ¶ 58).

    Plaintiff's allegations regarding the inherent distinctiveness and acquired secondary

meaning of its trade dress and mark are sufficient. Questions regarding secondary meaning "are

questions of fact" for which the parties and the Court need "a full record[.]" *Niles Audio Corp.*,

174 F. Supp. 2d at 1319 (alteration added; citing *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*,

716 F.2d 854, 860 (11th Cir. 1983)). It would be error to grant dismissal. *See id.* (declining to

dismiss the complaint under Rule 12(b)(6) because development of a factual record was

necessary).

    Additionally, even though Plaintiff failed to respond to Defendant's argument that

Plaintiff's trade dress is not legally protectable because it only consists of common shapes, the

Court will not grant Defendant's Motion on this basis. Adjudication of this argument "is beyond

the scope of a Rule 12(b)(6) motion." *Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 387

(W.D. Va. 2018).

    In fact, Defendant's cited authorities do not address the question of common shapes at the

pleading stage — without the benefit of an evidentiary record. (*See* Mot. 10–11). *Brooks Shoe*,

716 F.2d at 860, was decided on a motion for preliminary injunction; *Vital Pharmaceuticals, Inc.*,

511 F. Supp. 2d at 1310, was decided after a non-jury trial; and *Seabrook Foods, Inc. v. Bar-Well*

*Foods Limited*, 568 F.2d 1342, 1343 (C.C.P.A. 1977), was decided on appeal from a dismissal by

the Trademark Trial and Appeal Board, *see id*.  Without the benefit of a factual record, the Court

cannot determine whether Plaintiff's alleged trade dress consists of only common shapes.  Further,

Defendant fails to rebut Plaintiff's argument that even if each individual feature of the product is

non-distinctive because it is a generic shape, the "whole collection of features taken together"

might still be distinctive.  (Resp. 16 (citation and quotation marks omitted)).[3]

In sum, Defendant does not persuade the Court that the trade dress and mark are not

protectable under the functionality and distinctiveness doctrines.  Consequently, the unfair

competition claims also survive.

3.    The Tortious Interference Claim

Next, Defendant argues that the facts Plaintiff alleges are too conclusory to support its

tortious interference claim.  (*See* Mot. 16–17).  The Court disagrees.

To state a tortious interference claim, a plaintiff must allege:

(1) the existence of a business relationship, not necessarily evidenced by an
enforceable contract; (2) knowledge of the relationship on the part of the defendant;
(3) an intentional and unjustified interference with the relationship by the
defendant; and (4) damage to the plaintiff as a result of the breach of the
relationship."

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

Defendant focuses on Plaintiff's purported failure to offer facts showing that Plaintiff

"possessed any 'right' in its claimed business relationships."  (Mot. 16).  According to Defendant,

Plaintiff's allegation that it had a contract with a customer Defendant knew about is insufficient to

establish a right and is contradicted by deposition testimony.  (*See id.* 16–17 (discussing Am.

Compl. ¶ 166)).  Defendant well knows it would be improper for the Court to consider deposition

---

[3] "When a party fails to respond to an argument or address a claim in a responsive brief, such argument or
claim can be deemed abandoned."  *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311
n.7 (S.D. Fla. 2017) (citations omitted).

testimony that is not a part of the pleading to determine whether the Amended Complaint's allegations are true.  *See de Jesus Hernandez v. Four Seasons Hotels Ltd.*, No. 05-22360-Civ, 2005 WL 8155880, at *1 (S.D. Fla. Dec. 2, 2005) ("In ruling on a motion to dismiss, the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." (alteration, quotation marks, and citations omitted)).

Plaintiff plainly states a claim of tortious interference with business relationships under Florida Law.  Plaintiff alleges it "had established, advantageous business relationships with outdoor furniture retailers, dealers, and/or designers that specialize in outdoor umbrella space" (Am. Compl. ¶ 160); Defendant "has had knowledge of the Plaintiff's business relationships with [these customers]" (*id.* ¶ 161 (alteration added)); Defendant "intentionally and unjustifiably interfered with those business relationships," by "engaging in . . . infringement, misappropriation, misuse, and deliberate copying of Plaintiff's Trade Dress" (*id.* ¶ 163 (alteration added)); and "Plaintiff has been damaged as a result" (*id.* ¶ 168).  These allegations are sufficient to state a tortious interference claim under Florida law.  *See Tamiami Trail Tours*, 463 So. 2d at 1127.

### 4.    The Statute of Limitations and Doctrine of Laches

Defendant renews earlier arguments that Plaintiff's claims are barred by the statute of limitations and the equitable doctrine of laches.  (*See* Mot. 17–21).  These arguments are not well-taken, given the Court's preview at the June 16, 2023 hearing [ECF No. 47] that fact-intensive defenses such as statute of limitations and laches "are seldom, if ever, resolved on a 12(b)(6) motion."  (Resp. 19 (citation omitted)).

Generally, the statute-of-limitations defense cannot be raised on a motion to dismiss.  *See United States v. Mateu*, No. 06-22503-Civ, 2007 WL 196855, at *1 (S.D. Fla. Jan. 23, 2007); *see*

CASE NO. 23-20615-CIV-ALTONAGA/Damian

*also Josef's of Palm Beach v. S. Inv. Co.*, 349 F. Supp. 1057, 1058 (S.D. Fla. 1972).  It is an affirmative defense properly raised in an answer.  *See United Transp. Union v. Fla. E. Coast Ry. Co.*, 586 F.2d 520, 527 (5th Cir. 1978) (citation omitted).

The Court recognizes that a statute-of-limitations defense "can be raised by motion to dismiss where the complaint affirmatively shows that the claim is barred."  *Id.* (citations omitted).  But here, the Amended Complaint does not affirmatively show the claims are time-barred.  (*See generally* Am. Compl.; *see also* Mot. 19 (citing *id.*, Ex. 1, Kaufer Decl. [ECF No. 49-1] for relevant facts)).  The Amended Complaint does not specify exactly when the alleged claims arose.  (*See generally* Am. Compl.).  Consequently, the Court will not dismiss the Amended Complaint based on a statute-of-limitations defense.

For the same reasons, the laches defense is not a proper basis to dismiss the Amended Complaint.  *See Ultra-Images, LLC v. Franclemont*, No. 05-60538-Civ, 2005 WL 8154576, at *2 (S.D. Fla. Nov. 8, 2005) ("The laches defense is [] fact-specific and not well-suited for decision on a motion to dismiss." (alteration added; collecting cases)).

## B.    Defendant's Motion to Dismiss for Improper Venue Under Rule 12(b)(3) [4]

On a motion to dismiss based upon improper venue, the plaintiff has the burden of showing that venue in the forum is proper.  *See Aung Lin Wai v. Rainbow Holdings, Inc.*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).  Although "the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact[,]" *Webster v. Royal Caribbean*

---

[4] Defendant repeatedly explains that it is seeking dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, a transfer to the Eastern District of Pennsylvania under 28 U.S.C. section 1404(a).  (*See generally* Mot.; Reply).  While Defendant expressly states it does not seek dismissal under the doctrine of *forum non conveniens*, Plaintiff erroneously interprets Defendant's request as such.  (*See* Resp. 3).  The doctrine of *forum non conveniens* only applies when the alternative forum is abroad.  *See Pinkney v. Minecore Int'l, Inc.*, No. 09-60942-Civ, 2009 WL 10668198, at *6 (S.D. Fla. Sept. 30, 2009) (citation omitted).

CASE NO. 23-20615-CIV-ALTONAGA/Damian

*Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (alteration added; citing *Thomas v. Rehab. Serv. of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1376 (M.D. Ga. 1999)), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff[,]" *Aung Lin Wai*, 315 F. Supp. 2d at 1268 (alteration added; citations omitted).

Title 28 U.S.C. section 1391(b) governs venue in actions alleging jurisdiction in federal court based on violations of federal law or the U.S. Constitution and provides that those actions may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.*; *see also Kumbrink v. Hygenic Corp.*, No. 15-Civ-23530, 2016 WL 5369334, at *2 (S.D. Fla. Sept. 26, 2016) ("The general venue statute governs venue for trademark infringement claims." (citing 28 U.S.C. § 1391(b))).

Defendant insists dismissal is warranted under Rule 12(b)(3) because this is an improper venue.  (*See* Mot. 3–8).  In response, Plaintiff argues venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred here, Defendant has engaged in acts of infringement within here, and a substantial part of property that is the subject of the action is situated here.  (*See* Resp. 3 (citations omitted)).  The Court agrees with Plaintiff.

First, Plaintiff does not explain why the Court should dismiss rather than simply transfer the case on venue grounds.  Second, Defendant waived this argument when it abandoned its personal jurisdiction defense.  (*See* Resp. 3).  Federal Rule of Civil Procedure 12(h)(1) provides that "[a] party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment."  Fed. R.

CASE NO. 23-20615-CIV-ALTONAGA/Damian

Civ. P. 12(h)(1) (alterations added). "[B]y failing to object to personal jurisdiction and thus consenting to this [C]ourt's exercise of personal jurisdiction, [Defendant] is deemed to 'reside' in this [D]istrict for the purposes of [section] 1391(b)(1)." *Hamm v. Wyndham Resort Dev. Corp.*, No. 19-cv-00426, 2020 WL 5995050, at *7 (M.D. Tenn. Oct. 9, 2020) (alterations added).

Finally, venue is proper in this District because a substantial part of the events occurred here. "To determine where a substantial part of the events occurred, courts look for a location where a deceived customer buys a defendant's product in the belief that he is buying the plaintiff's." *Organic Mattresses, Inc. v. Env't Res. Outlet, Inc.*, No. 17-21905-Civ, 2017 WL 5665354, at *12 (S.D. Fla. Oct. 6, 2017) (citations omitted), *report and recommendation adopted sub nom. Organic Mattresses, Inc. v. Env't Res. Outlet, Inc.*, No. 17-21905-Civ, 2017 WL 5665356 (S.D. Fla. Oct. 24, 2017); *see also Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1029 (S.D. Fla. 1991) ("[A] cause of action for trademark infringement arises where the infringing activities take place." (alteration added; citation omitted)).

Plaintiff alleges several infringing acts that occurred in this District. (*See* Am. Compl. ¶¶ 10–47). "[T]he court may consider matters outside the pleadings" in the venue inquiry, *Webster*, 124 F. Supp. 2d at 1320 (alteration added; citation omitted); and the extraneous evidence also favors a determination that venue is proper here (*see* Resp., Ex. H, Kaufer Dep. Tr. [ECF No. 55-7] 4:10–12 (explaining that Florida is "one of [Defendant's] most important markets." (alteration added)).

C.      **Defendant's Motion to Transfer Under Section 1404(a)**

A motion to transfer venue is governed by 28 U.S.C. section 1404(a). *See Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-Civ, 2009 WL 455432, at *1 (S.D. Fla. Feb. 23, 2009). Under the statute, "[f]or the convenience of the parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (alteration added).

The purpose of section 1404(a) is to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (citations omitted). Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

To prevail on a motion seeking to transfer venue, the movant must establish that an adequate alternative forum is available, the private interests of the parties weigh in favor of transfer, and the public interest weighs in favor of transfer. *See Trafalgar Cap. Spec. Inv. Fund (In Liquidation) v. Hartman*, 878 F. supp. 2d 1274, 1282 (S.D. Fla. 2012) (citation omitted). Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted); *see also Meterlogic*, 185 F. Supp. 2d at 1300. Transfer can only be granted where the balance of convenience of the parties strongly favors the defendant. *See Trafalgar Cap. Spec. Inv. Fund*, 878 F. Supp. 2d at 1282 (citation omitted).

15

It is the movant's burden to establish transfer is warranted. *See Cent. Money Mortg. Co. [IMC], Inc. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000). This burden is high: a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation and quotation marks omitted). Of course, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citations omitted).

Defendant asserts this action also could have been brought in the Eastern District of Pennsylvania, and the balance of convenience favors transfer to that district or the District of New Jersey. (*See generally* Mot.). According to Defendant, transfer is proper because its "headquarters and warehouses are in the New Jersey suburbs of Philadelphia" (*id.* 4 (citation omitted)); the "operative facts relating to the design, marketing, and sale of the accused products will have occurred outside" the Southern District of Florida (*id.*); the key witnesses live in either southern New Jersey or Virginia and "[n]one lives within 900 miles of the Southern District of Florida" (*id.* 6 (alteration added)); Defendant's "lead counsel is in Philadelphia" (*id.*); "the relevant documentary evidence" is in the area of Pennsylvania (*id.*); and Plaintiff has greater means and thus would face less of a burden than Defendant if it has to litigate outside its home district (*see id.* 6–7).

Plaintiff states the request should be denied because Defendant "fail[s] to carry its heavy burden" of demonstrating that transfer is justified. (Resp. 3 (alteration added)).[5] Plaintiff insists

---

[5] Plaintiff maintains the Court should deny the request for transfer because Defendant violated Local Rule 7.1(a)(3) by failing to confer about the request. While the Court is permitted to deny the request on this basis, *see Cheshire v. Bank of Am., NA*, 351 F. App'x 386, 387 (11th Cir. 2009), the Court also concludes the request fails on its merits.

all Defendant has shown is that the Eastern District of Pennsylvania or New Jersey is more convenient for its own employees and counsel than this District (*see id.* 4); Pennsylvania and New Jersey could be more convenient for unidentified non-party witnesses and for the use of unidentified "documentary evidence" (*id.* 5–6); and it will face undocumented financial prejudice if the case remains here (*id.* 10–11). The Court balances the parties' assertions and determines transfer is not warranted.

### 1.    The Action Might Have Been Brought in Pennsylvania or New Jersey.

An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum. *See Meterlogic*, 185 F. Supp. 2d at 1299. Plaintiff does not deny that the action *might* have been brought in New Jersey or Pennsylvania. (*See generally* Mot.). Nor could it; because this case involves trademark infringement, any federal district court has subject-matter jurisdiction under 28 U.S.C. sections 1331 and 1338. Venue is proper in the Eastern District of Pennsylvania because Defendant is registered to do business in Pennsylvania and has consented to jurisdiction there. (*See* Mot. 4). Venue is also proper in New Jersey, where Defendant's warehouses and headquarters are located. (*See id.*). Finally, Defendant is amenable to process issuing out of the Eastern District of Pennsylvania or the District of New Jersey. (*See id.* 3–4). This preliminary inquiry being satisfied, the Court turns to an examination of the remaining factors.

### 2.    Convenience to the Parties and the Interests of Justice

#### a.    *Convenience to the Witnesses*

The convenience of the party and non-party witnesses is an important factor in the analysis of whether to grant a motion to transfer. *See Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-Civ,

CASE NO. 23-20615-CIV-ALTONAGA/Damian

2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008).   Defendant claims the Eastern District of Pennsylvania or District of New Jersey is more convenient for its witnesses than this District because its employees and executives responsible for marketing, product development, sales, and operations are in Pennsylvania, New Jersey, or Virginia; in short, all its employee-witnesses are located more than 900 miles from this District.  (*See* Mot. 6).

Defendant's "key witnesses" include its President, Mark Kaufer; Chief Operating Officer, Shawn MacDonald; National Retail Sales Manager, Laura Dudley; William Kenney, an employee responsible for marketing and product development; and Angela Rampson, head of commercial sales, who are all located outside this District.  (*Id.*).   All but Dudley reside in New Jersey or Pennsylvania.  (*See id.*).   Although Defendant identifies each witness by name, it does not explain what relevant testimony the witnesses would provide, aside from stating they all are "key . . . employee witnesses possessing facts regarding the development, marketing, sale, distribution, and/or shipment of the Greenwich Umbrella, Premium Concrete Filled Aluminum Base, and the Galvanized Plate base[.]"  (Kaufer Decl. ¶ 7 (alteration added)).

Plaintiff, in contrast, identifies at least seven party-witnesses who appear to be in Florida.  (*See* Resp., Ex. A, Pl.'s Amended/Supplemental Initial Disclosures ("Initial Disclosures") [ECF No. 55-1] 2–3).   These individuals include Plaintiff's Founder and Chief Executive Officer, Dougan Clarke; Chief Operating Officer, Frank Taff; Chief Marketing Officer, Mausi McDaniel; Executive Vice President of Sales, Patrick Troy; Director of Sales, Erika Canales; Vice President of Business Development, Lindsay Kissel; and Vice President of Finance, John Free.  (*See id.*).  Additionally, Plaintiff proffers specific information regarding the testimony each witness is expected to provide.  (*See id.*).

Plaintiff's Florida-based party witnesses outnumber Defendant's party witnesses in Pennsylvania and New Jersey seven to four.[6]  The Court "may not just compare the number of witnesses in each forum," but must "qualitatively evaluate the materiality of the testimony that the witnesses may provide[.]"  *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276–77 (S.D. Fla. 2011) (alteration adopted; other alteration added; quoting *Gonzalez*, 2008 WL 516847, at *2); *see also Wi-LAN USA, Inc. v. Alcatel-Lucent USA Inc.*, No. 12-23568-Civ, 2013 WL 358385, at *4 n.2 (S.D. Fla. Jan. 29, 2013) (noting that vague references to potential witnesses, without specific information about the accused products or an explanation of the relevant testimony to be provided, are not sufficient to support transfer); (*see also* Reply 6).  Still, a qualitative assessment does not favor one party over the other, since both parties' witnesses will offer "substantive and material testimony[.]"  *Duffy v. Gen. Motors, Inc.*, No. 18-81726-Civ, 2019 WL 3412171, at *2 (S.D. Fla. June 6, 2019) (alteration added), *report and recommendation adopted*, No. 18-cv-81726, 2019 WL 3408927 (S.D. Fla. June 25, 2019).

Plaintiff also identifies many third-party witnesses located in this District.  (*See* Initial Disclosures 3–11).  In contrast, Defendant only mentions its five party witnesses.  "[T]he Court gives less weight to the inconvenience imposed on employees of the parties than it does for non-party witnesses."  *Michael Kors, LLC v. Chunma USA, Inc.*, No. 15-23587-Civ, 2016 WL 11020246, at *4 (S.D. Fla. Feb. 23, 2016) (alteration added; citations omitted); *cf. Hotel Motel, LLC v. United Fire & Cas. Co.*, No. 12-62554-Civ, 2013 WL 12091643, at *3 (S.D. Fla. July 1, 2013) ("Even though convenience of the parties is not weighed as heavily as convenience of non-

---

[6] Plaintiff identifies one potential witness who does not live in Pennsylvania, New Jersey, or Florida: Dudley.  (*See* Mot. 6).  Her location does not weigh in favor of either retention or transfer because Florida, Pennsylvania, and New Jersey are equally inconvenient for her.

parties; it is still a factor when considering a transfer of venue." (citation omitted)).   Thus, the presence of non-party witnesses in Florida lends support to a decision not to transfer.

At bottom, the number and relevance of both party and non-party witnesses from Florida outnumber witnesses from any other state; and Defendant has only identified employee-witnesses. As stated, employee-witnesses' inconvenience receives lesser weight. Defendant has failed to demonstrate that the convenience of the witnesses weighs in favor of transfer.

       *b.*   *The Location of Relevant Documents and the Ease of Access to Proof*

Defendant admits that "[i]n a world with . . . copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant."   (Mot. 6 (alterations in original; citation and quotation marks omitted)).   Still, Defendant maintains that because "the relevant documentary evidence is in another venue," this factor favors transfer.   (*Id.* (citation omitted)).   Plaintiff notes that this factor should be afforded minimal weight in the modern era of electronic discovery, and in any event, does not clearly favor transfer because Plaintiff "has identified key documents located within this District[.]"   (Resp. 6 (alteration added)).   Specifically, Plaintiff points to:

> (a) physical products and photographs of same; (b) design and development documents; (c) documentary evidence demonstrating use in commerce, advertising efforts, marketing expenditures, and trade channels; (d) documentary evidence of media coverage; (e) documentary evidence of promotions and sales; and (f) documentary evidence of the accused products and/or photographs of same, including at non-party locations in this District.

(*Id.* (citation omitted)).

The Court has previously found, and repeats here, that "[p]roducing documents and other files for litigation . . . is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval."   *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, No. 10-20715-Civ, 2010 WL 3056600, at *5 (S.D. Fla. Aug. 4, 2010)

(alterations added; citation omitted).  Defendant does not say why it would be burdensome for it to produce its documentary evidence in Florida.  (*See generally* Mot.).  Defendant does not even identify what its difficult-to-transfer documentary evidence is or where it is located.  (*See generally id.*).  In contrast, Plaintiff provides a specific list of the evidence located in this District.  (*See* Resp. 6).  Consequently, this factor does not support — or favor — transfer.

        *c.  Convenience to the Parties*

        Defendant joins its analysis of this factor with its analysis of the first factor involving the convenience of the witnesses, perhaps because all its witnesses are employees.  (*See* Mot. 5–6).  "[T]he convenience of the parties . . . concerns the appearance of employees at court, and, to some extent, the appearance of counsel."  *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328 (M.D. Fla. 2010) (alteration added).  Defendant's inconvenience must be weighed against any inconvenience caused to Plaintiff if the action is transferred.  *See Burger King Corp.*, 755 F. Supp. at 1030.  To the extent this inquiry involves the consideration of employee-witnesses, the Court has already concluded that, if anything, this factor appears to weigh in favor of keeping the case in this District.

        Although Defendant acknowledges that its counsel's location is not an important factor, Defendant argues this factor still deserves some weight, and notes its counsel is in Pennsylvania. (*See* Mot. 6).  Whatever weight this factor may have been entitled to is neutralized by the inconvenience of Plaintiff's Miami counsel having to litigate in New Jersey or Pennsylvania. Additionally, Defendant has already retained counsel in Florida.  (*See* Notices of Appearance [ECF Nos. 10, 11]).

        There is no dispute that litigating this case in the Southern District of Florida will be inconvenient for Defendant because Defendant has no employees or offices in South Florida.  But

Plaintiff is a Florida limited liability company with its principal place of business is in Florida. (*See* Am. Compl. ¶ 48). Whatever weight the Court would have given to Defendant's interest in litigating near the location of its headquarters and warehouses is neutralized by Plaintiff's interest in litigating in its home State. This factor does not favor transfer. *See Burger King Corp.*, 755 F. Supp. at 1030 (weighing this factor in favor of retention of the case when transfer would "merely shift inconvenience from defendant to plaintiff" (citation omitted)).

### d.    The Locus of Operative Facts

Defendant insists that the locus of operative facts is in Pennsylvania and New Jersey where its headquarters and warehouses are located, and that none of the "operative facts relating to the design, marketing, and sale of accused products" occurred in this District. (Mot. 4). In trademark infringement cases, "the locus of operative facts is often the headquarters of the allegedly infringing entity, where design and development took place." *Implant Seminars, Inc. v. Lee*, No. 18-23097-Civ, 2019 WL 1979365, at *5 (S.D. Fla. May 3, 2019) (alterations adopted; citation and quotation marks omitted). Of course, as Plaintiff argues, the location of Defendant's headquarters cannot be determinative or else a defendant "would always be allowed to transfer the case back to its home forum." (Resp. 8 (citing *Catch Curve, Inc. v. Integrated Glob. Concepts, Inc.*, No. 1:06-cv-2199, 2007 WL 9612268, at *9 (N.D. Ga. Sept. 20, 2007))).

Although it may be true that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue," *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (citation omitted), this factor may still be neutral if the facts "occurred in both districts[,]" *Sec. & Exch. Comm'n v. Walker*, No. 20-62564-Civ, 2021 WL 5088853, at *3 (S.D. Fla. Aug. 16, 2021) (alteration added). Still, "[t]he locus of operative facts factor is not neutral simply because a product is sold in the district in which an action is brought." *Atlas IP,*

CASE NO. 23-20615-CIV-ALTONAGA/Damian

*LLC v. Bos. Sci. Corp.*, No. 14-20596-Civ, 2014 WL 11910629, at *6 (S.D. Fla. July 9, 2014) (alteration added; citations omitted).

Plaintiff points to many acts that have occurred or are occurring in this District and which Defendant does not address.  (*See* Resp. 6–7; *see generally* Reply).  While Defendant claims that "[a]ll operative facts relating to the design, marketing, and sale of the accused products will have occurred outside this [D]istrict" (Mot. 4 (alterations added)), Plaintiff points to testimony where Defendant admits that Florida is "one of [Defendant's] most important markets."  (Resp. 7 (alteration added; citing Kaufer Dep. Tr. 4:10–12)).  Additionally, Defendant's executives regularly travel throughout Florida and this District for sales and training purposes.  (*See* Resp. 7).

Yet, those facts relate to Defendant's *sale* of the accused products, and not where the allegedly infringing product is designed and manufactured — Pennsylvania and New Jersey. Consequently, the locus of operative facts favors transfer; but it is not determinative.

### e.   The Availability of Process to Compel Unwilling Witnesses

"Courts generally transfer cases when important witnesses can not [sic] be compelled to testify in the forum, but could be subpoenaed in the transferee court."  *Wi-LAN USA, Inc. v. Apple Inc.*, No. 12-cv-24318, 2013 WL 1343535, at *4 (S.D. Fla. April 2, 2013) (alteration adopted; citation and quotation marks omitted).  To weigh in favor of transfer, it is not enough to say potential witnesses are outside the Court's subpoena power.  *See Trafalgar Cap. Specialized Inv. Fund*, 878 F. Supp. 2d at 1287.  The movant must also show the witnesses would not willingly attend trial, and a deposition would be inadequate to present the witnesses' testimony.  *See id.* at

1287–88.  Defendant admits that at this stage of the proceedings, this factor is neutral.  (*See* Mot.

7).  The Court agrees.

To start, Plaintiff is correct that Defendant's failure to name any specific witnesses — or even provide general descriptions of witnesses — who are outside the Court's subpoena power makes it difficult for the Court to assign any weight to this factor favoring Defendant.  *See Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, No. 14-80651-cv, 2014 WL 12469974, at *4 (S.D. Fla. Sept. 16, 2014) ("While it may turn out that there are more witnesses outside the subpoena power of the Court for Defendant, without any indication as to the number and materiality of these potential witnesses, the Court is only left to speculate.").

Certainly, this case is not like *Atlas IP, LLC*, 2014 WL 11910629, at *6, or *Game Controller Technology LLC v. Sony Computer Entertainment America LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014), where the defendants pointed to specific, third-party witnesses who were important to the cases and would not be able to testify in this District.  Most of the key witnesses in this case are the parties' employees (*see* Mot. 6; Pl.'s Initial Disclosures); and Defendant fails to identify any third-party witnesses who would be unwilling to appear at trial in this District (*see generally* Mot.).  Indeed, Plaintiff is the only party that "specifically identifies [] witnesses who live and reside in this District, [and] who would [] be outside the subpoena power of" the proposed transferee Districts.  *Advanced Ground Info. Sys., Inc.*, 2014 WL 12469974, at *4 (alterations added; citation omitted); (*see also* Resp. 10).

This factor does not weigh in favor of transfer; rather, it weighs in favor of retaining the case.  *See Advanced Ground Info. Sys., Inc.*, 2014 WL 12469974, at *4.

CASE NO. 23-20615-CIV-ALTONAGA/Damian

> f.   *The Relative Means of the Parties*

Defendant argues that this factor weighs heavily in favor of transfer because "[t]he relative means of [Plaintiff] dwarf those of [Defendant]." (Mot. 6 (alterations added)). Plaintiff disputes that Defendant would "suffer financial prejudice" by being forced to litigate in this forum and points out that Defendant has opted to litigate twice before in Miami-Dade County as a plaintiff; that Defendant has "tremendous revenues" and means to afford litigating here; and Defendant has "employed two firms" including "one in Florida . . . which [] suggests 'litigation muscle[.]'" (Resp. 10–11 (alterations added)).

This is not a case where the relative means of the parties "differ greatly." *Alexandre v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 20-cv-60130, 2020 WL 3266072, at *4 (S.D. Fla. Mar. 30, 2020) ("Defendant is a corporation doing business as an insurance carrier and Plaintiff is an individual." (citation omitted)). Rather, both parties are large businesses with considerable resources. (*See* Resp. 6–7). Since both parties appear to have "adequate means" to litigate this case in any of the proposed jurisdictions, "the relative means of the parties does not favor transfer." *Plain Bay Sales, LLC v. Gallaher*, No. 18-80581-Civ, 2018 WL 8899305, at *4 (S.D. Fla. July 11, 2018).

> g.   *Forum's Familiarity with the Governing Law*

Defendant concedes this factor is neutral, whereas Plaintiff insists it weighs in its favor. (*See* Mot. 8; Resp. 11 & n.14). The Court agrees with Plaintiff that this factor weighs against transfer to Pennsylvania since there are claims brought under Florida law but not under Pennsylvania law. (*See generally* Am. Compl.); *see Waterproof Gear, Inc. v. Leisure Pro, Ltd.*, No. 8:08-cv-2191, 2009 WL 1066249, at *6 (M.D. Fla. Apr. 20, 2009) (denying motion to transfer from Florida to New York because if the case was "transferred to New York, the New York district

25

court would have to apply Florida law to [the plaintiff]'s state law claims[,]" and the "New York district court would not be as familiar with Florida law as a Florida district court would be" (alterations added; citation omitted)).  Since there are claims alleged under New Jersey law (*see* Am. Compl. ¶¶ 129–42), this factor is neutral as to transfer to that venue.

### h.   Weight Accorded a Plaintiff's Choice of Forum

Plaintiff's choice of this forum should not be disturbed unless other considerations clearly outweigh it.  *See Robinson*, 74 F.3d at 260; *see also Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 341 (8th Cir. 1983) ("But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").  Put another way, "[i]n the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative."  *NTN Bearing Corp. of Am. v. Charles E. Scott, Inc.*, 557 F. Supp. 1273, 1279 (N.D. Ill. 1983) (alteration added).

Admittedly, "where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to less consideration."  *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-Civ, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009) (quotation marks and citations omitted).  But here, "it would be inaccurate to state that none of the operative facts in this case occurred within the forum chosen by Plaintiff[]."  *Mason*, 146 F. Supp. 2d at 1361 (alteration added).  Moreover, "a plaintiff's choice of forum must be afforded considerable deference, where, as here, [] [P]laintiff has elected to bring suit in the district in which [it] resides."  *Id.*  (alterations added; citation omitted).  Under such circumstances, courts have found that "the preference for [a plaintiff's] choice of forum is [not] 'clearly outweighed' by other considerations."  *Id.* at 1364 (alterations added).

Thus, the Court finds that this factor favors retaining the case.

*i.    Trial Efficiency and the Interests of Justice*

To determine whether trial efficiency and the interests of justice favor transfer, the Court considers "administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, No. 15-24067-Civ, 2016 WL 1546427, at *7 (S.D. Fla. Apr. 15, 2016) (citation omitted).

Defendant only addresses the "administrative difficulties" aspect of this inquiry and provides statistics showing the "[m]edian time from filing to trial" is shorter in the Eastern District of Pennsylvania than in the Southern District of Florida.  (Mot. 8 (alteration added)).  Additionally, while the number of pending cases is greater in the Eastern District of Pennsylvania than in this District, the number of weighted filings is greater in this District.  (*See id.*).  Thus, Defendant concludes that "[e]fficiency favors transfer."  (*Id.* (alteration added)).[7]

Plaintiff maintains that Defendant's statistics are outdated, and the "[u]pdated statistics reflect that there are less [sic] pending cases in this District . . . and that the median time from filing to trial in this District . . . is shorter than the Eastern District of Pennsylvania."  (Resp. 13 (alterations added; emphasis omitted; citing *id.*, Ex. K, Trial Efficiency Statistics [ECF No. 55-11])).  Defendant does not address Plaintiff's more up-to-date statistics.  (*See generally* Reply).

On balance, it appears that the trial efficiency statistics are neutral at best; if anything, the statistics favor retention of the case.  *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1168

---

[7] Defendant does not present trial efficiency statistics for the District of New Jersey, nor does it address Plaintiff's statistics that suggest the "trial efficiency" factor clearly favors this District over the District of New Jersey.  (*See* Resp. 12–13; *see generally* Reply).

(S.D. Fla. 2017) ("Courts require a significant difference between districts before finding that congestion merits transfer." (citation and quotation marks omitted)).

Plaintiff goes on to argue that the "interests of justice" favor retention of this case because Florida has an interest in protecting its residents against tortious conduct, and there is a "local interest in having localized controversies decided at home[.]" (Resp. 11 (alteration added; citation and quotation marks omitted)). Defendant does not address this argument. The Court agrees with Plaintiff that "the local interest in having localized controversies decided at home" favors retention of the case. *Rothschild Connected Devices Innovations, LLC*, 2016 WL 1546427, at *7 (citation omitted). [8]

> 3.    Conclusion on Venue

The Court now balances all the factors and concludes that they favor retention of the case. Certainly, all the factors — except the locus of operative facts — are either neutral or favor retention of the case. Defendant has not met its burden of showing that other considerations outweigh Plaintiff's choice of forum, even if the "locus of operative facts . . . . slightly favors transfer." *TocMail Inc. v. Microsoft Corp.*, No. 20-60416-Civ, 2020 WL 12442001, at *3 (S.D. Fla. Oct. 15, 2020) (alteration added; citation omitted) (denying transfer when other factors weighed in favor of retaining the case, even though the locus of operative facts weighed in favor of transfer).

## III.  CONCLUSION

Being fully advised, it is

---

[8] Although this factor "encompasses the locus of operative facts[,]" Standard in Considering Transfer — Interest of Justice, 15 Fed. Prac. & Proc. Juris. section 3854 (4th ed.), and the Court has found that the locus of operative facts is in New Jersey or Pennsylvania, Defendant does not even attempt to argue that this case is of local importance to the proposed transferee Districts (*see generally* Mot.). The Court does not give weight to this consideration.

CASE NO. 23-20615-CIV-ALTONAGA/Damian

**ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 49]** is **DENIED**.

Defendant has until and including August 28, 2023, to file an answer to Plaintiff's Amended

Complaint **[ECF No. 40]**.

**DONE AND ORDERED** in Miami, Florida, this 15th day of August, 2023.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record